John Bradley Leitch, Esq.
Lathrop & Gage L.C.
2345 Grand Boulevard
Suite 2800
Kansas City, MO 64108

Richard H. Weiskopf, Esq.
O'Connell & Aronowitz
54 State Street
Albany, NY 12207

*Liberty Propane, LP and Liberty Propane Operations, LLC v. David R. Feheley*
Chapter 7 Case No. 06-12097/Adv. Pro. No. 07-90015

## LETTER DECISION AND ORDER

Before the court is the oral motion of Liberty Propane, LP and Liberty Propane Operations, LLC (collectively "Liberty") for a directed verdict against David R. Feheley ("Debtor").  The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(B) and 1334(b).

## Background

Liberty's claim arises out of their purchase of the assets of SunEnergy, Inc. and Inisfree Holdings, L.L.C. (collectively the "Companies"), two businesses previously owned by the Debtor and his son, Andrew Feheley.  The terms of the transaction were set forth in the Asset Purchase Agreement ("APA") executed in August 2004 by the Debtor, Andrew Feheley, and the Companies.  (Pl.'s Ex. 1.)  The APA defines "Sellers" as the Companies and the "Owners" as Devid R. Feheley and T. Andrew Feheley.  *Id.*  Pursuant to the terms of the APA, the Debtor, Andrew Feheley, and the Companies jointly and severally, represented and warranted the accuracy of the financial information supplied to Liberty.  *Id.*  More specifically, the APA provided, in part, as follows:

<u>Representations and Warranties of Seller and the Owners</u>

1

    Sellers and the Owners, jointly and severally, represent and warrant to Buyer, now and as of the closing, as follows:

. . . .

    (c)    <u>Financial Statements</u>
        (i)    The Financial Statements and the notes thereto are true, correct, accurate and complete and fairly present the financial condition and the results of operation of Sellers as at [sic] the respective dates of and for the periods referred to in Financial Statements, all in accordance with GAAP[.]

. . . .

    (l)    <u>No Omissions or Misrepresentations</u>
No representation, warranty or statement of either Sellers or any Owner contained in this Agreement or in the Exhibits attached hereto is false, or in light of the circumstances in which it was made, misleading in any respect and there has been no omission or failure to disclose facts known by any Owner, of any officer or director of Sellers which would adversely affect the transactions set forth in this Agreement.

(*Id.* ¶ 4.1.)

    The purchase price Liberty agreed to pay for SunEnergy's assets was based upon a multiple of 2003 revenues. In setting the price, Liberty's representative examined SunEnergy's financial statements and the underlying source documents. In July 2004, Liberty requested the invoices to support certain revenues for 2003.

    After the sale was consummated, Liberty asserted that the Debtor, his son, and the Companies fraudulently overstated and misrepresented the 2003 cash flow of SunEnergy and, as a result, the purchase price was more than Liberty would have agreed to pay for the assets purchased. More specifically, Liberty alleged that the second set of SunEnergy invoices they were supplied with in July 2004 had been altered. Liberty filed its arbitration demand in December 2004. Liberty asserted claims for breach of contract and fraud and sought rescission of the purchase transaction or recovery of the damages caused by the fraud and

2

misrepresentations on the parts of the Debtor, his son, and the Companies. The arbitration with respect to Andrew Feheley was stayed as a result of his personal bankruptcy filing.

On July 17, 2006, the arbitrator issued a final award ("Award") finding that the Companies and the Debtor breached the APA and caused loss to Liberty. The arbitrator awarded Liberty $1,250,543.26 in compensatory damages, plus costs and fees against the Debtor based upon breach of contract. In addition, the arbitrator awarded Liberty $1,250,543.26 in compensatory damages against the Companies based upon breach of contract and fraud, plus an additional $100,000.00 in punitive damages.

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on August 18, 2006. By order entered September 28, 2006, the automatic stay was modified for the limited purpose of allowing Liberty to have the Award confirmed by the United States District Court for the District of Arizona pursuant to the Federal Arbitration Act, which was done by Judgment of the District Court dated December 6, 2006.

On January 31, 2007, Liberty commenced this adversary proceeding against the Debtor seeking a determination that the Award be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B) because the Debtor procured the debt by fraud. Liberty moved for summary judgment based upon principles of collateral estoppel and res judicata. The court denied Liberty's motion concluding that, contrary to Liberty's assertion, the arbitrator did not find for Liberty on its fraud cause of action against the Debtor. While the court held that the Debtor was not collaterally estopped from litigating the issue of fraud, collateral estoppel did apply to other specific findings made by the arbitrator in the Award, namely:

> The second set of . . . invoices supplied by SunEnergy to Liberty in July 2004 was intentionally falsified by someone at SunEnergy.

3

> Clear and convincing evidence confirms that SunEnerey, Inc. and Inisfree Holdings, L.L.C. supplied falsified invoices to Liberty's President and Liberty.
>
> The false invoices were material to the transaction. Without those additional revenues shown in the second set of invoices . . . the sale would not have closed.
>
> Only SunEnergy had access to the invoices. Only [Debtor] and SunEnergy had any motive to alter the invoices.

(Summ. J. Mot. Tr. 4-5, Jan.30, 2008 (No. 26)).

**The Trial**

A trial was held May 12-13, 2008. At trial, the Debtor and Liberty's Chief Executive Officer and Chief Financial Officer testified. Liberty also presented the deposition testimony of two SunEnergy employees.

The Debtor testified that he was not aware that the second set of invoices provided to Liberty in July 2004 had been falsified, and he had no information as to how it happened.[1] The Debtor indicated he signed the APA and warranted the accuracy of the information provided to Liberty as president of SunEnergy and as a member of Inisfree. He also admitted he signed a third line on the APA, "David R. Feheley," with no official designation or title after his signature. When questioned about his third signature on the APA, the Debtor testified that he did not consider that signature to bind him in an individual capacity.

At trial, the Debtor also acknowledged that he had little or no information concerning, or involvement with, the administration of the Companies at the time he executed the APA. In addition, the Debtor admitted that he had not seen the Companies' 2003 financial statements.

At the conclusion of trial, Liberty argued that it had proven the required elements of § 523(a)(2)(A) and (B) and, accordingly, made an oral motion for directed verdict. In response to

---

[1] The testimony referenced in this decision is based on the court's recollection and review of the tape recording of the trial. Neither party provided the court with a transcript of the trial.

4

Liberty's oral motion, the Debtor asserted that a negotiated term of the APA, namely that the Debtor would be entitled to additional monies if SunEnergy met certain gross profit projections in the year following the sale, negated any intent on the part of the Debtor to deceive or mislead Liberty. In essence, the Debtor argued that any intent on his part to mislead Liberty would be inconsistent with an agreement to defer additional consideration.

The court indicated on the record that it was inclined to grant Liberty's motion, however, it was willing to give the Debtor until May 30, 2008, to file a written response to Liberty's oral motion. Any reply by Liberty was to be filed by June 13, 2008. The court's docket indicates that the Debtor failed to file a response to the motion pursuant to the court's directive. On June 13, 2008, Liberty filed a letter with the court asking that its motion be granted in light of the Debtor's decision not to respond.

## DISCUSSION

In ruling on a motion for judgment as a matter of law, the court must "consider the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences from the evidence that the jury might have drawn in that party's favor." *See LNC Investments, Inc. v. First Fidelity Bank*, 126 F.Supp.2d 778, 783 (S.D.N.Y. 2001). To the extent that the Debtor sought to develop a defense at the conclusion of trial based upon a negotiated term of the APA, the court deems the defense abandoned based upon the Debtor's failure to submit a post-trial memorandum with supporting authorities as directed by the court.

Consistent with the fresh start policy under the Bankruptcy Code, "exceptions to discharge must be strictly and literally construed against the creditor and liberally construed in favor of the honest debtor." *In re Spar*, 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994) (citations omitted). A creditor seeking to except a debt from discharge under § 523(a)(2) must prove the

5

necessary elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

**Dischargeability Under 523(a)(2)(A)**

Section 523(a)(2)(A) provides, in relevant part, as follows:

(a) a discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -
(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by -
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

Liberty contends that it "relied to its substantial detriment on the false representations that Mr. Feheley caused to be provided to it, specifically the information contained in the [APA]." (Compl.¶ 47 (No.1).) By its terms, § 523(a)(2)(A) excludes from its reach any "statement"-written or oral-"respecting . . . financial condition." Accordingly, the misrepresentations contained in the APA are not relevant to an objection plead under § 523(a)(2)(A). As a result, Liberty's 523(a)(2)(A) cause of action cannot be sustained.

**Dischargeability Under § 523(a)(2)(B)**

Section 523(a)(2)(B) provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt -

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by — (B) use of a statement in writing - (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).

6

Under the Bankruptcy Code, if the debtor is an individual, an insider includes a "corporation of which the debtor is director, officer, or person in control." 11 U.S.C. § 101(31)(A)(iv). It is undisputed that Debtor is an officer of SunEnergy. SunEnergy, therefore, qualifies as an "insider" of the Debtor for nondischargeability purposes. The second set of SunEnergy invoices relate to the financial condition of SunEnergy as its value was based upon its 2003 revenues, which were evidenced by the invoices. Based upon these findings and the findings of the arbitrator, the second set of invoices fulfill the requirement that there be a statement in writing that is false with respect to an insider's financial condition. In addition, the arbitrator found the false invoices were material to the purchase and sale transaction and, without those additional revenues shown in the second set of invoices, the sale to Liberty would not have closed. In addressing the requirement of "reasonable reliance," the Second Circuit has observed

> Once it has been established that a debtor has furnished a [creditor] a materially false financial statement, the reasonableness requirement of § 523(a)(2)(B) cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith. Reasonableness is therefore a low hurdle for the creditor to meet, and is intended as an obstacle only for creditors acting in bad faith . . . . The reasonableness of reliance requires the fact finder to consider the totality of the circumstances . . . .

*In re Bonnanzio*, 91 F.3d 296, 305 (2d Cir. 1996) (citations and internal quotation marks omitted). *See also In re Cohn*, 54 F.3d 1108, 1117 (3d Cir. 1995) (The reasonableness of a creditor's reliance should be judged objectively, i.e., "that degree of care which would be exercised by a reasonably cautious person in the same business transaction under similar circumstances.").

The court concludes that Liberty reasonably relied upon the second set of invoices. The invoices were allegedly generated in the normal course of the SunEnergy's business. Liberty requested the invoices to confirm SunEnergy's revenues in connection with its acquisition of

SunEnergy. Viewing the totality of the circumstances, it would be reasonable for a "reasonably cautious person" to rely on the invoices.

Based upon the foregoing, the court finds the first, second and third elements needed to substantiate a § 523(a)(2)(B) cause of action satisfied. The issues remaining are whether the Debtor knew the invoices were false and whether the representations were made with the intent to deceive Liberty.

The Debtor admits he signed the APA. The Debtor's argument that he did not intend to obligate himself personally by signing the APA lacks merit. The APA, which is not ambiguous on its face, clearly indicates otherwise.

As a party to the APA, the Debtor represented and warranted the accuracy of the financial condition of the Companies as set forth in the financial statements and accompanying notes provided to Liberty. However, the Debtor testified he had little or no involvement with the Companies at the time the APA was negotiated and executed. He even admitted that he had not seen the Companies' 2003 financial statements. By his own admissions, the Debtor had no basis signing the APA as president, member, or individually, as he was not in a position to make any warranties or representations regarding Companies' finances. Based upon the foregoing, the court finds the Debtor's testimony not credible. Where intent is at issue, a debtor's credibility is a substantial factor and the court's assessment thereof is entitled to great deference. *In re Shaheen*, 111 B.R. 48, 52-53 (S.D.N.Y.1990). Because the Debtor's credibility unraveled at trial, the court concludes that the Debtor's statements that he had no knowledge of the falsified invoices are simply not believable. Therefore, the court concludes that the Debtor was aware of the falsified second set of invoices and that those false representations were meant to deceive Liberty.

## CONCLUSION

For the reasons stated above, Liberty's motion for a directed verdict is granted with respect to its § 523(a)(2)(B) cause of action, and the Debtor's debt to Liberty is deemed nondischargeable.

It is SO ORDERED.                               /s/ Robert E. Littlefield, Jr.

Dated: October 31 , 2008                        -------------------------------------------
                                                Hon. Robert E. Littlefield, Jr.
                                                U.S. Bankruptcy Judge